## Docket No. 12-56844

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

LAUREL DICKRANIAN,

*Plaintiff-Appellant,*

v.

CITY OF LOS ANGELES
and LOS ANGELES CITY ETHICS COMMISSION,

*Defendants-Appellees.*

_____

*Appeal from a Decision of the United States District Court for the Central District of California,*
*No. 12-cv-05145-ODW-SS · Honorable Otis D. Wright*

## APPELLANT'S OPENING BRIEF

DANIEL A. REISMAN, ESQ.
REISMAN & REISMAN
5900 Wilshire Boulevard, Suite 2600
Los Angeles, California 90036
(323) 330-0580 Telephone
(323) 389-0694 Facsimile

*Attorney for Appellant,*
*Laurel Dickranian*

 COUNSEL PRESS · (800) 3-APPEAL

PRINTED ON RECYCLED PAPER 

# Table of Contents

Table of Contents ........................................................................................... i

Table of Authorities ..................................................................................... iii

Jurisdictional Statement ................................................................................ 1

Statement of the Issues Presented for Review .......................................... 2

Statement of the Case ................................................................................... 2

I. Nature of the Case ............................................................................ 2

II. Course of Proceedings .................................................................... 3

III. Disposition Below ........................................................................... 3

Statement of Facts ......................................................................................... 3

1. Background ............................................................................. 3

2. The Literature-Filing Requirements in Former LAMC §§ 49.7.11(C) and 49.7.26. ...................................................... 4

3. The Literature-Filing Requirement in LAMC § 49.7.31 ................ 6

Summary of Argument .................................................................................. 7

Argument ....................................................................................................... 10

I. The Changes to the LAMC Do Not Render This Appeal Moot ................... 10

II. Standard of Review .......................................................................... 10

III. The Literature-Filing Requirement Is Facially Unconstitutional ................ 10

A. The literature-filing requirement is unconstitutional speech compulsion ................................................................. 12

1. Compelled disclosure of statistical facts about the underlying political speech is subject to exacting scrutiny .............................. 12

2. Compelled disclosure to the City and the public at large of the expressive content of political speech warrants strict scrutiny ....... 14

B. The literature-filing requirement is unconstitutionally overbroad ........ 15

1.  The literature-filing requirement substantially burdens First Amendment rights and creates an unnecessary risk of chilling free speech .................................................. 16

C.  The literature-filing requirement is not narrowly tailored to a compelling government interest ........................................ 17

D.  Even if exacting scrutiny applies, the literature-filing requirement fails to pass muster because no sufficiently important government interest justifies the burden that it places on political speech ............... 18

IV.  The Complaint Sufficiently Stated Claims for Relief; The District Court Erred in Granting Dismissal Under Rule 12(b)(6) Without a Factual Record ........................................... 20

A.  The Constitution requires the City to justify content-based restrictions on speech ......................................... 20

B.  The Complaint sufficiently pleaded a violation of Ms. Dickranian's First Amendment rights .................................. 21

C.  With no factual record, and no recourse to legal authority directly on point, the City must produce evidence to satisfy its constitutional burden, which it cannot do at the pleading stage .................. 22

Conclusion ................................................. 25

Certificate of Compliance .................................... 26

Statement of Related Cases ................................... 27

Certificate of Service ........................................ 28

Addendum ................................................. 29

# Table of Authorities

## Cases

*44 Liquormart, Inc. v. Rhode Island,*
  517 U.S. 484 (1996) ............................................................21

*ACLU of Nev. v. City of Las Vegas,*
  466 F.3d 784 (9th Cir. 2006) ..................................... 22, 23

*AE ex rel. Hernandez v. County of Tulare*,
  666 F.3d 631 (9th Cir. 2012) ...........................................10

*AFL-CIO v. FEC*,
  333 F.3d 168 (D.C. Cir. 2003) .........................................15

*Ahcom, Ltd. v. Smeding*,
  623 F.3d 1248 (9th Cir. 2010) ...........................................1

*Arizona Free Enter. Club's Freedom Club PAC v. Bennett,*
  131 S.Ct. 2806 (2011) ................................................ 12, 20

*Arizona Right to Life PAC v. Bayless*,
  320 F.3d 1002 (9th Cir. 2003) ...........................................21

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004) ............................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................ 21, 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................21

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ................................................... 14, 19

*Canyon Ferry Baptist Church v. Unsworth,*
  556 F.3d 1021 (9th Cir. 2009) ................................... 11, 19

*Citizens for Clean Gov't v. City of San Diego,*
  474 F.3d 647 (9th Cir. 2007) .............................. 21, 24, 25

*Citizens United v. FEC*,
  130 S.Ct. 876 (2010) ............................................... passim

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
  657 F.3d 936 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 1566 (U.S. 2012) .... 15, 16

*Davis v. FEC*,
    554 U.S. 724 (2008) ...................................................................... 18, 20

*Doe v. Reed*,
    130 S.Ct. 2811 (2010) ........................................................................17

*Family PAC v. McKenna*,
    685 F.3d 800 (9th Cir. 2012)................................................................18

*Foti v. City of Menlo Park*,
    146 F.3d 629 (9th Cir.1998)................................................................23

*Galvin v. Hay*,
    374 F.3d 739 (9th Cir. 2004)..............................................................14

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor of Baltimore*,
    683 F.3d 539 (4th Cir. 2012) *reh'g en banc granted* 11-1111 L, 2012 WL
    7855859 (4th Cir. Aug. 15, 2012).............................................. 13, 14

*Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.*,
    515 U.S. 557 (1993) ...................................................................... 12, 15

*Jerry Beeman & Pharmacy Services, Inc. v. Anthem Prescription Mgm't LLC*,
    652 F.3d 1085 (9th Cir. 2011) ............................................................13

*McConnell v. FEC*,
    540 U.S. 93 (2003) ..............................................................................19

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) ............................................................................15

*Members of City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) ............................................................................21

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008 ...............................................................1

*Nat'l Org. for Marriage v. Daluz*,
    654 F.3d 115 (1st Cir. 2011) ...............................................................13

*New Mexico State Invest. Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir. 2011) ............................................................10

*Nixon v. Shrink Mo. Gov't PAC*,
    528 U.S. 377, 120 S. Ct. 897, 145 L. Ed. 2d 886 (2000)............................. 21, 24

*Pub. Serv. Co. v. Shoshone-Bannock Tribes*,
    30 F.3d 1203 (9th Cir. 1994)..............................................................10

*Riley v. Nat'l Fed'n of Blind of N.C., Inc.,*
   487 U.S. 781 (1988) ......................................................... 14, 15

*Sec'y of State of Md. v. Joseph H. Munson Co.,*
   467 U.S. 947 (1984) .............................................................15

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002) .............................................................22

*Telesaurus VPC, LLC v. Power,*
   623 F.3d 998 (9th Cir. 2010) ...............................................10

*Thalheimer v. City of San Diego,*
   645 F.3d 1109 (9th Cir. 2011) .............................................20

*United States v. Alvarez,*
   132 S.Ct. 2537 (2012) ..........................................................18

*Virginia v. Hicks,*
   539 U.S. 113 (2003) .............................................................16

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008) .............................................................16

**Statutes**

2 U.S.C. § 434 ........................................................... 12, 18, 23

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 1331 ........................................................................1

28 U.S.C. § 2201 ........................................................................1

28 U.S.C. § 2202 ........................................................................1

28 U.S.C. § 1343 ........................................................................1

42 U.S.C. § 1983 ...................................................................1, 4

**Constitutional Provisions**

U.S. Const. amend. I ................................................... passim

U.S. Const. amend. XIV ........................................................1, 4

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................... 2, 21

**Regulations and Ordinances**

Former LAMC § 49.7.11 .........................................................5

Former LAMC § 49.7.26 ................................................................. 5, 6, 11

LAMC § 49.7.30 ................................................................................20

LAMC § 49.7.31 ......................................................................... 6, 10, 11

LAMC § 49.7.38 ................................................................................16

**Other Authorities**

FEC, *Campaign Finance Law Quick Reference for Reporters*, *available at* http://www.fec.gov/press/bkgnd/bcra_overview.shtml (last visited Apr. 17, 2013). ....................................................................................................14

# Jurisdictional Statement

*Jurisdiction of the District Court*

The district court had jurisdiction over this action, which raises federal constitutional and statutory claims, under the First Amendment and Fourteenth Amendment and 42 U.S.C. § 1983. Jurisdiction was proper under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). Injunctive and declaratory relief were also authorized by 28 U.S.C. §§ 2201(a) and 2202.

*Jurisdiction of the Court of Appeals*

On September 12, 2012, the district court granted the defendants' motion to dismiss with prejudice. ER 1-4 (Order Granting Defs.' Mot. to Dismiss.) Dismissal of the Complaint without leave to amend is interpreted as an effective dismissal and termination of the action thereby allowing an immediate appeal. *See Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir. 2010); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1102 (9th Cir. 2008) (failure to address the plaintiff's request for leave to amend "necessarily entailed a denial" thereof and a determination that the complaint could not be cured by allegation of additional facts).

Ms. Dickranian timely filed a notice of appeal on October 5, 2012. ER 5-6. This Court's jurisdiction rests on 28 U.S.C. § 1291.

## Statement of the Issues Presented for Review

1. Whether this appeal is moot due to the changes in the LAMC.

2. Whether the literature-filing requirement in the challenged sections of the LAMC is facially unconstitutional.

3. Whether the district court erred in summarily dismissing the Complaint without a factual record.

An addendum containing the relevant portions of both the former and current Los Angeles Municipal Code is attached to this brief.

## Statement of the Case

### I.  Nature of the Case

Plaintiff-Appellant, Laurel Dickranian (also known by her married name, Laurel Karabian), brought this action to challenge certain portions of the Los Angeles City Charter and the Los Angeles Municipal Code ("LAMC"). At issue is the constitutionality of the City of Los Angeles' independent expenditure disclosure and reporting requirements, specifically the requirement that after a certain monetary threshold is reached, any person making independent expenditures to advocate for or against a City candidate must file a copy of the communication itself with the City Ethics Commission, which then posts it on its website. ER 96.

## II. Course of Proceedings

Ms. Dickranian filed her Complaint on June 13, 2012, in the Central District of California. ER 96-114. The City of Los Angeles (the "City") moved to dismiss under Fed. R. Civ. P. 12(b)(6) on its behalf as well as on the behalf of the Los Angeles City Ethics Commission (the "City Ethics Commission" or "Ethics Commission") on August 12, 2012. ER 72-73. In support, the City argued that each of the challenged provisions of the City Charter and the LAMC are constitutional. On September 12, 2012, the district court granted the City's motion (ER 1-4) with prejudice and "summarily dismissed" (ER 3) the complaint "for all those reasons discussed in Defendants' moving and reply papers[.]" ER 4.

## III. Disposition Below

The district court dismissed Ms. Dickranian's complaint with prejudice on September 12, 2012. ER 4. Ms. Dickranian appeals from the dismissal as to Counts Two and Three of her Complaint.

## Statement of Facts

### 1. Background

In February 2009, Ms. Dickranian wrote and distributed a one-page letter in support of then candidate for City Attorney, Michael Amerian. ER 99 (Compl. ¶ 19.) She paid for the printing, reproduction, and mailing entirely from her own funds, acting entirely independently of any candidate or committee. ER 99 (Compl.

¶¶ 18-19) Moreover, she only distributed it to a distinct ethnic religious group. ER 99 (Compl. ¶ 17.)

Soon after, the City Ethics Commission opened an investigation into the matter. ER 99 (Compl. ¶ 19.) Next, when Ms. Dickranian refused a stipulated settlement, including an admission of liability and a fine of $13,707.55, the Ethics Commission concluded its investigation and formally accused Ms. Dickranian of three counts of violating various sections of the Los Angeles City Charter and the Los Angeles Municipal Code. ER 99, 112-114 (Compl. ¶¶ 19.) Over a year later, without explanation, the Ethics Commission dismissed the charges with prejudice. ER 99 (Compl. ¶¶ 25-26.)

Ms. Dickranian thus suffered actual injury from the unconstitutional prosecution, and her civil rights continue to be under threat of unconstitutional enforcement actions initiated by the City Ethics Commission. Accordingly, the Complaint alleges infringement and threatened infringement of Ms. Dickranian's First and Fourteenth Amendment rights and seeks relief pursuant to 42 U.S.C. § 1983.

### 2. The Literature-Filing Requirements in Former LAMC §§ 49.7.11(C) and 49.7.26.

Counts two and three of the Complaint address the literature filing requirements and the reporting requirements. Count two alleges that the literature filing requirements in former LAMC § 49.7.11(C) are unconstitutional, and Count three

4

alleges that the financial reporting requirements, which also contain a literature filing requirement, in former LAMC §§ 49.7.26 (A) and 49.7.26(B) are unconstitutional. ER 100. Failure to comply with any of the above provisions may result in either civil or criminal penalties.

Former LAMC § 49.7.11 (C) required each committee making independent expenditures that sends a mailing or distributes more than 200 substantially similar pieces of campaign literature to send a copy of the mailing or other literature to the Ethics Commission at the same time the mailing or other literature is given to the post office or otherwise distributed. It further requires that the Ethics Commission post a copy to its website for public view. These are the literature filing requirements.

Former LAMC § 49.7.26 (A) required that any person or committee who makes an independent expenditure of $1,000 or more supporting or opposing any candidate for City office must notify the Ethics Commission within 24 hours each time one or more payments meeting that threshold are made. Additionally, the person making the independent expenditure must file with the Ethics Commission a copy of the communication itself, if in print format, or a copy of the script or recording, if the communication is in telephonic, video or radio format. Former LAMC § 49.7.26(B). ER 100. These are the reporting requirements.

5

Notably, both sets of requirements require the person making the independent expenditure to file a copy of the communication itself with the City. Moreover, in the case of the reporting requirements, LAMC §§ 49.7.26 (A) and (B) cannot be severed. If the speaker fails to file a copy of the communication with the Ethics Commission, then the speaker violates the reporting requirements.

### 3. The Literature-Filing Requirement in LAMC § 49.7.31[1]

On January 30, 2013, a significantly amended and renumbered portion of the LAMC, the Campaign Finance Ordinance, took effect. *See* RJN & Ex. A. The LAMC sections that are the subject of the complaint were significantly updated, amended, and reorganized. Disclosure and reporting requirements for independent expenditure communications now all fall under one section heading. The new disclosure requirement includes a broader literature-filing requirement. For example, any person who "makes or incurs expenditures of $1,000 or more for the communication" (LAMC § 49.7.31(A)(1)), must now submit a copy of the communication itself to the City regardless of the number of copies circulated. § 49.7.31(C)(2). Finally, like the former reporting requirements, the literature-filing requirement cannot be severed from the disclosure requirements in the rest of § 49.7.31. If the speaker fails to file a copy of the communication with the Ethics Commission, then the speaker violates the disclosure requirements.

---

[1] The new Campaign Finance Ordinance is the subject of Ms. Dickranian's request for judicial notice. (RJN, Ex. A)

When the phrase "literature-filing requirement" is used in the remainder of this brief, it refers to the all of the literature-filing requirements addressed above unless otherwise specified.

## Summary of Argument

1. *Mootness.* The City Council significantly amended the Los Angeles Municipal Code's Campaign Finance Ordinance since Ms. Dickranian filed suit and subsequently filed her notice of appeal; however, the current literature-filing requirement is substantially similar to the former one, so the conflict remains.

2. *Facial Challenge to the literature-filing requirement.* The literature-filing requirement is facially unconstitutional. Under compelled speech doctrine, the City may not mandate that a person say something she would otherwise not say because it necessarily alters the content of the speech. Moreover, the right to tailor speech to an audience is protected under the First Amendment. Statements of pure fact may, however, be the exception. Disclosure requirements, such as those upheld by the Supreme Court in *Citizens United*, fit within this model. They are subject to a lower level of scrutiny because they only compel the speaker to divulge statistical facts about the underlying political speech. The literature-filing requirement, on the other hand, is properly subject to strict scrutiny because the speaker is compelled to divulge the expressive content of core political speech to the City and the public.

The literature-filing requirement is also fatally overbroad. It forces the speaker to choose between disclosing the expressive content to the City and to the public at large through the City's website or not speaking. The burden on speech is thus substantial, and the net effect is a reduction in the quantity of core political speech.

Finally, the literature-filing requirement is neither narrowly tailored to a compelling government interest nor substantially related to an important government interest. The informational interest is limited to the financial expenditure, i.e., who spent money and how it was spent. Therefore, less restrictive alternatives, such as standardized disclosure or reporting requirements, fully satisfy the informational interest without the same limiting effect on speech as the literature-filing requirement.

3. *Necessity of a factual record.* The literature-filing requirement is a content-based restriction on speech. No direct legal authority supports the City's position, which the district court adopted, that there is a sufficiently important government interest that justifies disclosure of the entire content of political speech to the government and to the public at large. Thus, the City must present evidence to show that the restriction meets the appropriate level of scrutiny, and Ms. Dickranian is entitled to develop a factual record.

First, the district court adopted the City's position that the literature-filing requirement is not a content-based restriction on speech. However, a law is

content-based on its face if an official must examine the contents of a communication to determine if the law applies.

Second, the district court adopted the City's position "that the filing requirement is similar to other filing requirements that have been examined and upheld by the Supreme Court and the Ninth Circuit, under the same exacting scrutiny standard applicable to other types of disclosure requirements." ER 91-92. However, the City conceded, "that no reported decision deals specifically with the filing requirement" in its reply below. ER 27. Where, as here, no legal authority directly addresses the issue, the court may not assume that a content-based restriction on speech is constitutional.

Third, the district court adopted the City's position that "the [literature-filing] requirement is only marginally broader and infinitely more useful (both in providing information and context) to the voters than the information required in the disclosures reports about the communication." ER 27. Again, this is conjecture and an implausible justification. Further, it defies empirical testing, and thus, contravenes the purpose of heightened scrutiny, which shifts the burden to the City to prove that the harms are real, the fears are justified, and that the chosen restriction on speech is necessary to eliminate them.

The district court's decision should be reversed.

**Argument**

## I. The Changes to the LAMC Do Not Render This Appeal Moot

Where the threatened harm still exists, or the changes in the law do not resolve the conflict, the case remains alive…." *Pub. Serv. Co. v. Shoshone-Bannock Tribes*, 30 F.3d 1203, 1205 (9th Cir. 1994). As noted above, the literature-filing requirement remains in effect despite amendment and renumbering. *See* LAMC § 49.7.31. Hence, the changes do not solve the conflict.

## II. Standard of Review

This Court reviews de novo the district court's dismissal of a complaint for failure to state a claim. *See Telesaurus VPC, LLC v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010). In conducting this review, the Court accepts the factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff." *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (citing *New Mexico State Invest. Council v. Ernst & Young LLP,* 641 F.3d 1089, 1094 (9th Cir. 2011)).

## III. The Literature-Filing Requirement Is Facially Unconstitutional

The literature-filing requirement – a requirement that the speaker submit a copy of what is likely a highly personalized and politically charged communication to the government, which in turn makes it publicly available– places a substantial burden on the speaker's First Amendment rights and thus, cannot withstand scrutiny.

The City styles the literature-filing requirement as an independent expenditure disclosure requirement. *See* LAMC § 49.7.31. It's not.

> [D]isclosure requirements are not designed to advise the public generally what groups may be in favor of, or opposed to, a particular candidate…; they are designed to inform the public what groups have demonstrated an interest in the passage or defeat of a candidate…by their *contributions* or *expenditures* directed to that result. *Canyon Ferry Baptist Church v. Unsworth,* 556 F.3d 1021, 1032-33 (9th Cir. 2009).

Hence, there is a distinction between an ordinance requiring disclosure of some facts about the underlying communication, which are targeted toward the monetary expenditure, and disclosing the full content of the communication itself. The distinction is important because the latter places a much more substantial burden on core political speech.

In *Citizens United v. FEC*, the Supreme Court determined that limits on independent expenditures are unconstitutional. 130 S.Ct. 876, 913 (2010). The Court upheld disclosure requirements, in part, because they are a "less restrictive alternative to more comprehensive regulations of speech…" *Id.* at 915. While the Court did not specify what such a regulatory regime would look like, the literature-filing requirement appears to be a good fit because it effectively limits the quantity of speech.

Once the speaker reaches one of the monetary thresholds under former LAMC § 49.7.26(A) or under current LAMC § 49.7.31(A), she has a choice: either she

forgoes her autonomy and her right to tailor the speech by making it available both to the City and to the public through the City, or she can stop speaking. *Cf. Arizona Free Enter. Club's Freedom Club PAC v. Bennett,* 131 S.Ct. 2806, 2810 (2011) (Citing *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.,* 515 U.S. 557, 573 (1993), the Supreme Court struck down Arizona's matching funds trigger statute partly because the provision "contravene[d] 'the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message.'"). Hence, the literature-filing requirement impermissibly infringes on the speaker's First Amendment protection against compelled speech.

### A. The literature-filing requirement is unconstitutional speech compulsion

#### 1. Compelled disclosure of statistical facts about the underlying political speech is subject to exacting scrutiny

Standardized financial reporting requirements, such as the federal ones in the Bipartisan Campaign Reform Act ("BCRA") § 201 [2] (2 U.S.C. § 434), compel only

---

- [2] Electioneering communications must be disclosed if the direct costs of producing and airing the communications aggregates to $10,000 or more.
- Reports must be filed on the day after the public distribution of the communication that causes the total costs to exceed the threshold. Subsequent reports must be filed within 24 hours of a communication's distribution each time that the total costs for electioneering communications again exceed $10,000 in the aggregate.
- Reports must identify the person making the disbursement, as well as any person exercising direction or control over the activities of that person (e.g. officers, directors, executive directors or their equivalent, partners or owners

speech sufficient to satisfy the informational interest of the voters—who spent money and how she spent it. [3]

Given their limited scope, applying exacting scrutiny to uniform or standardized reporting and disclosure requirements fits with this Court's reasoning that laws that compel speech consisting of "purely objective" "facts" are at times constitutional. *See Jerry Beeman & Pharmacy Services, Inc. v. Anthem Prescription Mgm't LLC*, 652 F.3d 1085 (9th Cir. 2011).

A recent Fourth Circuit decision is instructive as well. In *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor of Baltimore*, the court considered noncommercial compelled speech in a non-campaign context and compared it to the constitutional disclosure requirements reviewed in *Citizens United*. The Fourth

---

of the organization), the custodian of records for the spender, the amount of each disbursement of $200 or more, along with the date of the disbursement and the person to whom the payment was made, all clearly identified, candidates referred to, the disclosure date, any individual who donated a total of $1,000 or more since January of the preceding year to the person or account who paid for the ad.

FEC, *Campaign Finance Law Quick Reference for Reporters*, *available at* http://www.fec.gov/press/bkgnd/bcra_overview.shtml (last visited Apr. 17, 2013).

[3] *See e.g., Nat'l Org. for Marriage v. Daluz*, 654 F.3d 115, 118 (1st Cir. 2011) ([T]he disclosures required by the provision here impose no great burden on the exercise of election-related speech. All that is required is the completion of a one-page form, which can be filled out and submitted to the Board online. This relatively small imposition serves the recognizedly important government interest in provid[ing] the electorate with information as to where political campaign money comes from and how it is spent; citation and quotation marks omitted.)

Circuit reasoned, "disclosure of contributions or expenditures will always be limited to factual information…." 683 F.3d 539, 555 (4th Cir. 2012) *reh'g en banc granted,* 11-1111 L, 2012 WL 7855859 (4th Cir. Aug. 15, 2012).

Thus, "disclosure laws are less likely to be impermissibly content- or viewpoint-based and pose a lower risk of altering the speaker's message." *Id.* On the other hand, the court likened a regulation that compelled pregnancy centers to display a specific message regarding abortions "to the restrictions on campaign speech that the Court held were subject to strict scrutiny." *Id.* (citing *Citizens United,* 130 S.Ct. at 898; *Buckley v. Valeo*, 424 U.S. 1, 58–59 (1976)).

### 2. Compelled disclosure to the City and the public at large of the expressive content of political speech warrants strict scrutiny

Because "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech[]" (*Riley v. Nat'l Fed'n of Blind of N.C., Inc*., 487 U.S. 781, 795 (1988)), the literature-filing requirement in the former LAMC sections and in its current form, must be subject to strict scrutiny and held presumptively unconstitutional.

"'[T]he First Amendment mandates that we presume that speakers, not the government, know best both what they want to say and how to say it.'" *Galvin v. Hay*, 374 F.3d 739, 750 (9th Cir. 2004) (quoting *Riley*, 487 U.S. at 790-91).

"Indeed this general rule, that the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to

14

statements of fact the speaker would rather avoid…" *Hurley*, 515 U.S. at 573-74

(citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-342, (1995); *Riley*,

487 U.S. at 797-798).

Compelled disclosure of the expressive content of speech not only to the City,

but also to the general public through the Ethics Commission's website, deprives

the speaker of the ability to tailor the speech. Accordingly, the literature-filing

requirement is unconstitutional. *Cf. AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir.

2003) ("where the [FEC] compiles information relating to speech or political

activity for law enforcement purposes, our case law requires that it provide a

separate First Amendment justification for publicly disclosing the materials").

### B. The literature-filing requirement is unconstitutionally overbroad

The literature-filing requirement is "properly subject to a facial attack" because

it "imposes a direct restriction on protected First Amendment activity…." the

defect in the [ordinances] is that the means chosen to accomplish the [City's]

objectives are too imprecise, so that in all its applications the [literature-filing

requirement] creates an unnecessary risk of chilling free speech…." *Comite de

Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th

Cir. 2011) *cert. denied*, 132 S. Ct. 1566 (U.S. 2012) (quoting *Sec'y of State of Md.

v. Joseph H. Munson Co.,* 467 U.S. 947, 967–68 (1984); internal quotation marks

omitted).

15

"The overbreadth doctrine exists 'out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions.'" *Id.* (quoting *Virginia v. Hicks,* 539 U.S. 113, 119 (2003)).

Under the LAMC, a person who violates one of the independent expenditure disclosure provisions may be guilty of a misdemeanor. *See* LAMC § 49.7.38(A).

"The party challenging the law need not necessarily introduce admissible evidence of overbreadth, but generally must at least 'describe the instances of arguable overbreadth of the contested law.'" *Comite de Jornaleros de Redondo Beach*, 657 F.3d at 944. (quoting *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449 n. 6 (2008)).

### 1. The literature-filing requirement substantially burdens First Amendment rights and creates an unnecessary risk of chilling free speech

Not every independent expenditure communication is intended for a wide audience. While a speaker takes a risk of a message spreading further than intended when she distributes a personally crafted political leaflet, the risk should be the speaker's risk to take.

Moreover, far from implausible, it is quite likely that certain groups will never disclose the contents of their communications beyond their tightknit circles. As a result, the literature-filing requirement likely prevents people from speaking, as it

has Ms. Dickranian. *See* ER 96-97. And, it prevents people from freely associating, with the assurance that they can do so privately.

In the present case, Ms. Dickranian drafted a personalized message, and she distributed it to a specific ethic-religious group. ER 99 (Compl. ¶ 17.) In other words, she never intended for it, or expected it, to become public record.

Further discouraging free discourse is the fact that once the City Ethics Commission posts a copy of the communication on its website, it will likely be available on the internet forever.

Thus, the literature-filing requirement substantially chills speech, and it infringes on an individual's right to privacy of belief and association. *See e.g., Doe v. Reed*, 130 S.Ct. 2811, 2824-25 (2010) (Alito J. concurring) ("Requiring such disclosures…runs headfirst into a half century of our case law, which firmly establishes that individuals have a right to privacy of belief and association." citations omitted).

## C. The literature-filing requirement is not narrowly tailored to a compelling government interest

In the context of a candidate election, the Supreme Court only identified the informational interest as sufficiently important to justify compelled disclosure of basic information about political speech. *See Citizens United*, 130 S.Ct. at 915-16.

Whether the informational interest rises to the level of a compelling government interest may be a matter for debate, but even if it does, the literature-filing

17

requirement is not narrowly tailored to the informational interest because there are less restrictive alternatives. They are, for example, the federal disclosure [reporting] requirements (*see* BCRA § 201 (2 U.S.C § 434)) approved of by the Supreme Court in *Citizens United,* 130 S.Ct. at 915-16.

### D. Even if exacting scrutiny applies, the literature-filing requirement fails to pass muster because no sufficiently important government interest justifies the burden that it places on political speech

"To survive exacting scrutiny, 'the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights.'" *Family PAC v. McKenna*, 685 F.3d 800, 806 (9th Cir. 2012) (quoting *Davis v. FEC,* 554 U.S. 724, 744 (2008)); *see also United States v. Alvarez*, 132 S.Ct. 2537, 2551 (2012) (when government did not make a "clear showing of the necessity of the statute" to accomplish the interest in restricting false statements, the plurality struck down the law under exacting scrutiny).

None of the interests asserted by the City and adopted by the district court are strong enough to reflect the seriousness of the actual burden on First Amendment rights. Nor can the City make a clear showing of necessity, especially without evidence.

The City identified four interests in its moving papers below. ER 74 (Mem. of P. & A. in Supp. of Motion to Dismiss.) They are the informational interest (ER

83, 92, 94), the anticorruption interest (ER 83-84), the matching funds interest (ER 84, 93-94), and the enforcement interest (ER 92-93).

*First,* as detailed above, the informational interest is only substantially related to the disclosure of where political money comes from and how it is spent. *See Buckley,* 424 U.S. at 66 (cited with approval in *Citizens United*, 130 S.Ct. at 914). It is not substantially related to the compelled disclosure of the content of the speech itself.

*Second,* in *Citizens United,* the Supreme Court held, "we now conclude that independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption." 130 S.Ct. at 909. Because independent expenditures give no rise to the appearance of corruption, laws regulating them cannot serve an anti-corruption interest as a matter of law.

*Third*, the literature-filing requirement does not aid in enforcing more substantive electioneering restrictions because there are no limits on independent expenditures in City elections. *See, e.g., Canyon Ferry Baptist Church*, 556 F.3d at 1031-32 (Montana's disclosure requirements held not substantially related to enforcing other electioneering restrictions because of no substantive limits on contributions or expenditures in ballot issues (citing *McConnell v. FEC*, 540 U.S. 93, 196 (2003))). The interest is thus inapplicable where the substantive campaign-finance restrictions underlying that interest cannot be enforced against the person

19

from whom the government seeks to "gather[ ] . . . data." For that reason, in *Davis v. FEC*, the Court invalidated the disclosure requirements of BCRA's "Millionaire's Amendment" because the substantive contribution limits that the "disclosure requirements were designed to implement" were unconstitutional. 554 U.S. 724, 744 (2008).

*Fourth*, the Supreme Court held that matching funds programs with provisions triggered by independent expenditures are unconstitutional in *Arizona Free Enter. Club's Freedom Club PAC*, 131 S.Ct. at 2810. Revised since then, the matching funds provisions in LAMC § 49.7.30 no longer reference independent expenditures.

## IV.  The Complaint Sufficiently Stated Claims for Relief; The District Court Erred in Granting Dismissal Under Rule 12(b)(6) Without a Factual Record

### A.  The Constitution requires the City to justify content-based restrictions on speech

"When [a] plaintiff[] challenge[s] a content-based speech restriction, the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute." *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004). A "special constitutional burden [is] placed on the government to justify a law that restricts political speech." *Thalheimer v. City of San Diego,* 645 F.3d 1109, 1117 (9th Cir. 2011).

Under the "sliding scale" approach of intermediate scrutiny, "'[t]he quantum of empirical evidence needed to satisfy heightened judicial scrutiny'" [is] based on the "'novelty and plausibility of the justification raised.'" *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 652 (9th Cir. 2007) (quoting *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 391 (2000)). And the burden remains with the City to justify a novel restriction. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996) (applying intermediate scrutiny).

Indeed, "[the court] may not simply assume that [the] ordinance[s] will always advance the asserted state interests sufficiently to justify its abridgement of expressive activity." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 803 n. 22 (1984) (citations omitted). *See also Arizona Right to Life PAC v. Bayless*, 320 F.3d 1002, 1013 (9th Cir. 2003) (state government failed to prove that prohibiting PACs from placing unlimited ads late in election cycle was substantially related to reducing corruption).

## B. The Complaint sufficiently pleaded a violation of Ms. Dickranian's First Amendment rights

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the pleadings. A plaintiff is neither required to establish a prima facie case nor to show a probability of success. Rather, the plaintiff must state plausible claims for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662

(2009). The question is whether the plaintiff is entitled to present evidence in support of her claims. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).

In Counts Two and Three of her Complaint, Ms. Dickranian alleges actual injury to her First Amendment rights due to an unconstitutional enforcement action. And she states the legal basis for her claims as well as the relief she seeks. Specifically, the literature-filing requirement and the reporting requirements are content-based restrictions on speech, and that they cannot withstand scrutiny. ER 105-106, 108. Regardless of whether the proper level of scrutiny is strict or something lower, the City must justify the restriction with evidence.

### C. With no factual record, and no recourse to legal authority directly on point, the City must produce evidence to satisfy its constitutional burden, which it cannot do at the pleading stage

The City argued below that the literature-filing requirement is not a content-based restriction because "it is related to the disclosure requirement to submit a copy of the communication that represents the expenditure." ER 24:9-12 (Reply to Opp. to Mot. to Dismiss at 7.) Even though the district court agreed with the City, this is still conjecture. No factual record supports the City's contention.

Moreover, even if the purpose of the literature-filing requirement were view-point neutral, the City would still need to justify it because it is a content-based restriction on its face. See *ACLU of Nev. v. City of Las Vegas,* 466 F.3d 784, 794 (9th Cir. 2006).

22

Where a city ordinance restricted whether handbills could be distributed based on certain language, this Court held that the ordinance was content-based on its face. *Id.* In doing so, this Court explained,

> "[h]andbills with certain content pass muster; those requesting financial or other assistance do not. Even if this distinction is innocuous or eminently reasonable, it is still a content-based distinction because it 'singles out certain speech for differential treatment based on the idea expressed.'" *Id.* (quoting *Foti v. City of Menlo Park,* 146 F.3d 629, 636 n. 7 (9th Cir.1998)).

Like the restriction on handbills, the literature-filing requirement is a content-based restriction on speech on its face because the restriction singles out certain speech based on the idea expressed—advocacy for or against a candidate in a city election. Moreover, the literature-filing restriction is novel.

Neither the Supreme Court nor this Court has reviewed requirements that compel the speaker to file a copy of the communication with the government, which in turn, makes it public record. Indeed, the City and the district court agreed that no reported decision directly addresses the literature-filing requirement. ER 27.

Federal disclosure [reporting] requirements for independent expenditures do not require the speaker to file a copy of the communication itself with the [FEC]. *See* 2 U.S.C. 434. Indeed, in *Citizens United*, the issue regarding disclosure involved whether Citizens United was required to comply with the disclosure requirements

because it meant disclosing the names of contributors. One of the communications at issue was the purported documentary on Hillary Clinton, which was distributed via pay-per-view television. Neither the Court nor the parties contemplated the constitutionality of a requirement that Citizens United lodge a copy of the film with the FEC.

Hence, contrary to the City's position and the district court's ruling, the literature-filing requirement is novel, and should be accepted as such, especially at the pleading stage.

In its reply below, the City argued that the literature-filing requirement is only minimally more burdensome on speech than standard disclosure declarations, yet it is infinitely more useful in providing context for the voters. ER 27. Again, this is conjecture. Although the district court apparently accepted this rationale, this Court has "'never accepted mere conjecture as adequate to carry a First Amendment burden.'" *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647,653 (quoting *Shrink*, 528 U.S. 377 at 392).

In *Citizens for Clean Government*, this Court reversed the district court's denial of a permanent injunction because the district court "appeared to determine as a matter of law that the [c]ity had a sufficiently important interest in limiting contributions to recall elections." *Id.* In doing so, this Court explained,

> "[w]e cannot hold that hypotheticals, accompanied by vague allusions to practical experience, demonstrate a sufficiently

important state interest…. [T]he [c]ity offers no evidence of deliberation on the issue of campaign finance, and it has no recourse to legal authority addressing these exact issues because none exists." *Id.* at 654

As in *Citizens for Clean Government,* here, no legal authority addresses the exact issue because none exists. Accordingly, regardless of the level of scrutiny, at least some evidence is necessary for the City to justify the restriction on speech. Vague allusions to a content-neutral purpose and implausible justifications, involving untestable hypotheses, are not enough to satisfy the First Amendment.

## Conclusion

For all the foregoing reasons, the district court's decision should be reversed as to Counts Two and Three of Ms. Dickranian's Complaint.

Dated: April 17, 2013

Respectfully submitted,

/s/Daniel A. Reisman
Daniel A. Reisman
Attorney for Plaintiff-Appellant,
Laurel Dickranian

25

## Certificate of Compliance

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This brief uses a proportional typeface and 14-point font, and contains 5,517 words.

Dated: April 17, 2013

Respectfully submitted,


/s/Daniel A. Reisman
Daniel A. Reisman
Attorney for Plaintiff-Appellant,
Laurel Dickranian

## Statement of Related Cases

Circuit Rule 28-2.6

Plaintiff-Appellant Laurel Dickranian is aware of no other pending related case.

Dated: April 17, 2013

Respectfully submitted,

/s/Daniel A. Reisman
Daniel A. Reisman
Attorney for Plaintiff-Appellant,
Laurel Dickranian

**Certificate of Service**

I hereby certify that on April 17, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: April 17, 2013

Respectfully submitted,


/s/Daniel A. Reisman
Daniel A. Reisman
Attorney for Plaintiff-Appellant,
Laurel Dickranian

**Addendum**

## [FORMER] SEC. 49.7.11(C). CAMPAIGN DISCLOSURE AND REPORTING.

**C. Campaign Literature.** Each candidate for elective City office, and each committee making independent expenditures or member communications in a City election, who sends a mailing or distributes more than 200 substantially similar pieces of campaign literature shall send a copy of the mailing or other literature to the City Ethics Commission at the same time the mailing or other literature is given to the post office or otherwise distributed. Committees making independent expenditures or member communications in a City election and candidates who are required to open a campaign committee for City elective office shall electronically submit the mailing or other literature to the Commission in a Portable Document Format (PDF) or other electronic format pre-approved by the Commission. A candidate who is not required to open a committee for elective City office may submit the mailing or other literature either electronically or by mail, personal delivery, or facsimile. The Commission shall post without alteration all electronic submissions it receives under this section on its website within two business days of receipt. The Commission shall also post without alteration and within two days of receipt all other submissions it receives under this section on its website. The Commission shall not judge, comment upon or edit the contents of the mailings or other literature. **(Amended by Ord. No. 178,587, Eff. 5/20/07.)**

# [FORMER] SEC. 49.7.26. NOTICE OF PAYMENTS FOR INDEPENDENT EXPENDITURES AND NON-BEHESTED MEMBER COMMUNICATIONS.

(Amended by Ord. No. 178,064, Eff. 1/15/07.)

**A. Disclosure of Payments.** Any person, including any committee, that makes or incurs independent expenditures of $1,000 or more in support of or in opposition to any City measure or candidate for elective City office, or one or more payments for member communications, as defined by this article, totaling $1,000 or more in support of or in opposition to a candidate for elective City office or City measure, shall notify the City Ethics Commission within 24 hours by certified mail or fax or e-mail each time one or more payments, which meet this threshold, are made.

**B. Contents of Notice.** The notification shall consist of a declaration specifying each candidate or measure supported or opposed by the expenditure, the amount spent to support or oppose each candidate or measure, whether the candidate or measure was supported or opposed, and that the expenditure was not behested by the candidate or candidates who benefited from the expenditure. This declaration shall be made under penalty of perjury and signed by the person or officer and the treasurer of the group making the expenditure. In addition, the date and amount of the payment, a description of the type of communication for which the payment

was made or incurred, the name and address of the person making the payment, the name and address of the payee, and a copy of the mailing or advertisement, or a copy of the script or recording of the call, transmission, or advertisement, shall also be provided to the Commission. The notification also shall include disclosure of contributions of $100 or more received by the committee since the day after the closing date of the committee's last campaign disclosure report filed with the Commission or since the first day of the current calendar year, whichever date occurs later; however, contributions that are received, but earmarked for any other candidate or ballot measure outside the City of Los Angeles need not be disclosed. The notification also shall include disclosure of contributions of $100 or more made in the current calendar year by the person to City candidates, their controlled committees, committees primarily formed to support or oppose City measures, and City general purpose recipient committees.

**C. Notification to Candidates of Expenditures.** City Ethics Commission staff will notify all candidates by phone, fax or e-mail in the affected race within one business day after receiving the notice of payments for independent expenditures and uncoordinated member communications of $1,000 or more. The notification will indicate the candidate who was supported or opposed by the expenditure as indicated on the signed declaration and include a copy of the communication provided by the person or group making the expenditure.

**D. Exemption for Regularly Published Newsletters.** For purposes of the notification required in Subsection A., payments by an organization for its regularly published newsletter or periodical, if the circulation is limited to the organization's members, employees, shareholders, other affiliated individuals and those who request or purchase the publication, shall not be required to be reported.

**E. Copies of Communications – Delivery to the City Ethics Commission and Disclosure of Communications.** Any committee, including but not limited to a candidate controlled committee and an independent expenditure committee, that makes or incurs payments for 1,000 or more recorded telephone calls or any other forms of electronic or facsimile transmission of substantially similar content, or that makes or incurs expenditures of $1,000 or more for a radio or television advertisement, in support of or opposition to any candidate(s) for elective City office, shall send a copy of the script or recording used for each communication to the Ethics Commission within 24 hours of the first time the calls, transmissions, or advertisements are made or aired.

**[CURRENT] SEC. 49.7.31. Disclosure of Independent Expenditure Communications.**

A.   A person shall notify the Ethics Commission of an independent

expenditure communication when either of the following occurs:

1.  The person makes or incurs expenditures of $1,000 or more for the

communication; or

2.  The person makes or incurs expenditures of $100 or more for the

communication and distributes the communication to the following

number of persons:

a.  200 or more persons, if the distributor is a person who qualifies

as a committee under the Political Reform Act.

b.  1,000 or more persons, if the distributor is not a person who

qualifies as a committee under the Political Reform Act.

Once a notification threshold is met, every subsequent expenditure made

or incurred regarding that measure or candidate shall also be disclosed.

B.   The notification shall be submitted to the Ethics Commission within the

following time frames:

1.  From the first date an individual may file a Declaration of Intention to

Become a Candidate with the City Clerk through the date of the

associated general election, or during the 90 days prior to an election if no City candidates will be on the ballot, within 24 hours after making or incurring the expenditures.

2. At all other times, within five business days after making or incurring the expenditures provided, however, in no event later than the first date an individual may file a Declaration of Intention to Become a Candidate.

C. The notification shall include the following:

1. A declaration under penalty of perjury signed by the person and, if applicable, the committee treasurer, specifying the following:

    a. Each candidate or measure supported or opposed by the communication;

    b. The amount of the expenditure and the amount spent to support or oppose each candidate or measure;

    c. Whether each candidate or measure was supported or opposed;

    d. That the communication was not behested by any of the candidates who benefited from it;

    e. The dates the communication was made or distributed and any expenditure was incurred;

    f. A description of the type of communication;

    g.  The name and address of the person making, distributing, or incurring the expenditures or distributing the communication;

    h.  The name and address of the payee, if applicable, and any vender that provided service for the communication;

    i.  For committees, contributions of $100 or more received by the committee since the latter of the day after the closing date of the campaign statement filed by the committee or the first day of the current calendar year. This disclosure requirement does not apply to contributions that are earmarked for a non-City candidate or ballot measure; and

    j.  Contributions of $100 or more that the person made in the current calendar year to City candidates, City controlled committees, City ballot measure committees, City recall committees, committees primarily formed to support or oppose City candidates or measures, and City general purpose recipient committees.

2.  A copy of the communication.

    a.  If the communication is a telephone call or similar audio communication, a copy of the script and, if the communication is recorded, the recording shall be provided.

b. If the communication is audio or video, a copy of the script and an audio or video file shall be provided.

D. If an independent expenditure communication supports or opposes a City candidate, the Ethics Commission staff will notify all candidates in the affected race within one business day after receiving the required notice. The notification will indicate the candidates supported or opposed by the independent expenditure communication, as indicated on the signed declaration, and will include a copy of the independent expenditure communication.

E. The Ethics Commission shall post on its website, without alteration, all copies of independent expenditure communications filed with the Ethics Commission. The Ethics Commission may not judge, comment upon, or edit the contents of an independent expenditure communication.

F. This Section shall not apply to a news story, commentary, or editorial by a newspaper, radio station, television station, or other recognized news medium, unless the disclaimer is required for a paid communication under section 49.7.34.