No. 12-56844

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

LAUREL DICKRANIAN,

Plaintiff/Appellant,

vs.

CITY OF LOS ANGELES, et al.,

Defendants/Appellees.

Appeal from the United States District Court for the Central District of California
Honorable Otis D. Wright II (Case No. 12-05145)

# APPELLEES' ANSWERING BRIEF

CARMEN A. TRUTANICH, City Attorney (SBN 86629)
LAURIE RITTENBERG, Asst. City Attorney (SBN 106683)
**RENEE A. STADEL**, Deputy City Attorney (SBN 216881)
**GABRIEL S. DERMER**, Deputy City Attorney (SBN 229424)
200 North Main Street, Room 916, City Hall East
Los Angeles, California, 90012-4130
Telephone (213) 473-6850

Attorneys for Appellee
**CITY OF LOS ANGELES**

# Table of Contents

TABLE OF AUTHORITIES ...................................................................... iii

1. INTRODUCTION ...................................................................................1

2. STATEMENT OF JURISDICTION ......................................................1

3. STATEMENT OF THE ISSUES ...........................................................2

4. STATEMENT OF THE CASE ...............................................................2

5. STATEMENT OF THE FACTS .............................................................4

    A.    Statutory and Regulatory Background .......................................4

    i.    Applicable City Law at the Time Appellant Filed her Complaint ...............6

    ii.    Current City Law Applicable to

    Independent Expenditure Communications ...................................8

    B.    Factual Background.....................................................................10

6. STANDARD OF REVIEW ..................................................................11

7. SUMMARY OF ARGUMENT.............................................................12

8. ARGUMENT.......................................................................................14

    A.    The City's Independent Expenditure Disclosure Laws Are Constitutionally Sound and Consistent with Precedent ........................................14

    B.    The Supreme Court Has Held that Disclosure Requirements, Such as the City's Independent Expenditure Disclosure Provisions, are subject to the Less Restrictive Exacting Scrutiny Standard and Not Strict Scrutiny .........21

    C.    The City's Independent Expenditure Disclosure Requirements Serve Important Interests of Informing the Voters and Other Interests ................23

i

D.   The City's Independent Expenditure Disclosure Laws Are Substantially Related to the Governmental Interests of Providing Information to Voters and Other Interests ............................................................................... 30

E.   The Challenged Provisions Are Not Overbroad and Appellant's Facial Challenge Must Fail ....................................................................... 33

F.   Appellant's Campaign Communications to Voters Do Not Give Rise to Associational Rights ....................................................................... 34

G.   Appellant Cannot Meet her Burden Of Proof ............................................. 35

H.   The City's Campaign Disclosure Laws are Not Content-Based Restrictions ............................................................... 37

I.   If Necessary, the Independent Expenditure Disclosure Provisions May be Severed ........................................................................... 39

9.   CONCLUSION .................................................................................................. 40

CERTIFICATE OF COMPLIANCE .......................................................................... 41

STATEMENT OF RELATED CASES ....................................................................... 42

# TABLE OF AUTHORITIES

## Cases

*Alaska Right to Life Comm. v. Miles,* 441 F.3d 773 (9th Cir. 2006) .......... 22, 28, 34

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,*
    131 S. Ct. 2806 (2011) ....................................................................30

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) .................................................35

*Buckley v. Valeo,* 424 U.S. 1 (1976) .............................................. passim

*Canyon Ferry Baptist Church v. Unsworth*, 556 F.3d 1021 (9th Cir. 2009).... 28, 33

*Center for Individual Freedom v. Madigan*, 697 F.3d 464 (7th Cir. 2012) ............25

*Chula Vista Citizens for Jobs and Fair Competition v. Norris,*
    2012 U.S. Dist. LEXIS 39407 (S.D. Cal. March 22, 2012) ...............................34

*Citizens for Clean Government v. City of San Diego*,
    474 F.3d 647 (9th Cir. 2007) ..............................................................36

*Citizens United v. FEC*, 558 U.S. 310 (2010)................................... passim

*Davis v. FEC*, 554 U.S. 724 (2008) .......................................................28

*Doe v. Reed*, 130 S. Ct. 2811 (2010) ....................................................22

*Family PAC v. McKenna*, 685 F.3d 800, 811 (9th Cir. 2011) ......................... 16, 32

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)....................................27

*Greater Baltimore Center for Pregnancy Concerns Inv. v. Mayor of Baltimore*,
    683 F3d 539 (4th Cir. 2012) ..............................................................39

*Human Life of Wash, Inc. v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010) ......... passim

*N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089 (9th Cir. 2011).....11

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012).............................40

*National Organization for Marriage v. Daluz,*
    654 F. 3d 115 (1st Cir. 2011) ................................................... 19, 25, 32

*National Organization for Marriage v. McKee*, 649 F.2d 34 (1st Cir. 2011).........18

iii

*Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000).............................36

*Ognibene v. Parkes*, 2013 U.S. Dist. LEXIS 49083 (S.D.N.Y. April 4, 2013)......30

*Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2009)......................................35

*ProtectMarriage.com v. Bowen*, 830 F. Supp 2d 914 (E.D. Cal. 2011)..................32

*Thalheimer v. City of San Diego*, 645 F.3d 1109 (9th Cir. 2011) ...........................36

*U.S. v. Stevens*, 559 U.S. 460, 130 S. Ct. 1577 (2010)..................................... 33, 34

*Vermont Right to Life Committee v. Sorrel,*

   875 F. Supp. 2d 376 (D. Vt. 2012) ......................................................... 19, 25, 32

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) .. 33, 34

## Statutes

2 U.S.C. § 434 ...............................................................................................20

Cal. Gov. Code § 82013 ...................................................................................5

Cal. Gov. Code § 82031 ...................................................................................6

Cal. Gov. Code § 82013 .................................................................................32

Cal. Gov. Code § 84204 .................................................................................20

Cal. Gov. Code § 84550 .................................................................................20

## Other Authorities

California Constitution, Article I, § 3 ...........................................................26

Los Angeles City Charter Article VII............................................................ 5, 10

Los Angeles City Charter section 470 ........................................................ passim

Los Angeles City Charter section 471 ..........................................................4, 7

Former Los Angeles Municipal Code section 49.7.1.1 ...........................................5

Former Los Angeles Municipal Code section 49.7.11. .......................................7, 8

Former Los Angeles Municipal Code section 49.7.13 ...........................................7

Former Los Angeles Municipal Code section 49.7.14 ...........................................7

Former Los Angeles Municipal Code section 49.7.26 .......................................7, 8

Former Los Angeles Municipal Code section 49.7.28 ..........................................7, 8

Los Angeles Municipal Code section 49.7.2 ............................................ 5, 8, 28, 29

Los Angeles Municipal Code section 49.7.25 .................................................... 9, 30

Los Angeles Municipal Code section 49.7.31 ................................................. passim

Los Angeles Municipal Code section 49.7.32 .......................................................29

Los Angeles Municipal Code section 49.7.33 ................................................ 5, 9, 17

Los Angeles Municipal Code section 49.7.40 .......................................................39

New York City Campaign Finance Board Rules, Ch. 13 ........................... 20, 21, 26

San Diego Municipal Code section 27.2980 ..................................................... 21, 26

San Francisco Campaign and Government Conduct Code section 1.161 ........ 20, 26

San Jose Municipal Code section 12.06.1010 .................................................. 21, 26

## 1. INTRODUCTION

Appellant Laurel Dickranian, through her facial challenge, seeks to prevent voters from being informed about candidate elections and thwart the integrity and effective operation of the City's election laws. In 2009, Appellant sent thousands of letters to voters, spending thousands of dollars advocating for the election of a candidate for City Attorney with no disclosure to the City. Rather than comply with the City's modest campaign disclosure laws which simply require that the person file a report with a copy of the communication with the City Ethics Commission, the Appellant seeks to eliminate independent spending disclosure provisions. Not only do these provisions provide voters with essential information shortly before a local election, the Supreme Court has upheld substantially similar disclosure laws noting "in a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential." *Buckley v. Valeo*, 424 U.S. 1, 14-15 (1976). The City's rules regarding disclosures do not prevent anyone from speaking, but instead provide an important means of ensuring transparent elections and governance. For the reasons discussed herein, this Court should affirm.

## 2. STATEMENT OF JURISDICTION

The district court had jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4) and 2201(a) and 2202, which raised constitutional

and statutory claims under the First Amendment and the Fourteenth Amendment
and 42 US.C. § 1983. This Court has jurisdiction of this matter pursuant to 28
U.S.C. § 1291. On September 12, 2012 the district court granted the defendant's
motion to dismiss with prejudice. ER 1-4. The Appellant filed a notice of appeal
on October 5, 2012. ER 5-6.

## 3. STATEMENT OF THE ISSUES

A. Whether the City's independent expenditure communication disclosure
provisions requiring disclosure of campaign communications advocating for the
election or defeat of a City candidate when exceeding thresholds are constitutional.

B. Whether the District Court could properly dismiss Plaintiff's Complaint
on the record before it.

The relevant ordinances are contained in the Addendum attached to the
Appellant's Brief.

## 4. STATEMENT OF THE CASE

This case involves challenges to the constitutionality of the City's Municipal
Code provisions that govern City election campaign activity and facilitate
campaign related disclosures in City elections. Ms. Dickranian filed her
Complaint for injunctive, declaratory relief, and for damages on June 13, 2012.
ER 96. The Complaint challenged the constitutionality of (1) City Charter Section
470(l) and Los Angeles Municipal Code (LAMC) Section 49.7.28, requiring

persons who make independent expenditures to include disclaimers on campaign communications; (2) LAMC Section 49.7.11, subsection (c), requiring committees making independent expenditures that sends or distributes at least 200 substantially similar pieces of campaign literature to file a copy of the campaign communication to the City Ethics Commission and for the City Ethics Commission to post a copy of the literature on its website; and (3) LAMC Section 49.7.26 subsections A and B requiring persons making independent expenditures of $1,000 or more supporting or opposing any candidate for City office to notify the City Ethics Commission within 24 hours and file a copy of the communication with the City Ethics Commission. ER 96-119.

Appellant alleged that the City violated her free speech and associational rights by implementing, administering, and enforcing the City's independent expenditure disclosure laws, by making public her name and communication and requiring inclusion of certain disclaimer requirements. *Id.*

On August 13, 2012, the City moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6) because none of Ms. Dickranian's constitutional challenges presented a plausible claim for relief. ER 72. The District Court granted the City's motion in its entirety and dismissed the matter on September 12, 2013. ER 1. The Appellant filed her notice of appeal of the District Court's decision on October 5, 2013. ER 5-6. The appeal is only as to Counts Two and

Three of her complaint (she no longer challenges the City's independent expenditure disclaimer requirements) and seeks relief as to disclosure provisions which were adopted after the entry of the district court's judgment and were not at issue in the City Ethics Commission (Commission) investigation of the Appellant. Appellant's Brief at p. 3.

### 5. STATEMENT OF THE FACTS

#### A. Statutory and Regulatory Background

The City has enacted a comprehensive system of campaign finance laws which, in conjunction with the California Political Reform Act, are intended to promote fair and transparent City elections and avoid corruption and the appearance of corruption. The laws apply both to candidates running for City office and persons making independent expenditures to support or oppose those candidates. Included within the City's program is a matching funds program that provides to participating candidates a limited amount of public funds based on the candidate's receipt of private contributions. Appellee City's Request for Judicial Notice ("City RJN"), Exhibit 2, pp. 19-21 [City Charter Section 471]; Appellant Dickranian's Request for Judicial Notice ("Dickranian RJN"), pp. 25-30 [LAMC § 49.7.22-30].

At various times since 1984, the City or its voters have adopted ordinance or Charter provisions requiring, among other things, the disclosure of campaign

finance information. In 1990, the Commission was created to administer, audit, and enforce the City's campaign finance laws as well as recommend changes to those laws to the City Council. City RJN, Exhibit 3, pp. 25-30 [City Charter §§ 702-706]. The Commission enforces those laws through an administrative hearing process with final decisions by the Commission subject to review by the Los Angeles County Superior Court. City RJN, Exhibit 3, pp. 28-30 [City Charter § 706].

As part of its comprehensive system of campaign finance laws, the City requires certain basic disclosures regarding independent expenditures. These requirements include placing disclaimers on the campaign communications and filing reports and copies of the communications with the Commission. City RJN, Exhibit 1, pp. 13 [City Charter § 470(l)]; Dickranian RJN, pp. 30-34 [LAMC §§ 49.7.31, 49.7.33]

The City's campaign laws incorporate applicable provisions of the state Political Reform Act and regulations by reference unless otherwise provided. City RJN, Exhibit 1, p. 5 [City Charter § 470(b)]; Dickranian RJN p. 8, [LAMC § 49.7.2 (former LAMC § 49.7.1.1)]. Pertinent state definitions include "committee", "person" and "expenditure."[1]

---

[1] Government Code Section 82013 defines a "committee" to include "any person or combination of persons who directly or indirectly does any of the following: (a) receives contributions totaling one thousand dollars ($1,000) or

### i. Applicable City Law at the Time Appellant Filed her Complaint

At the time Ms. Dickranian filed her complaint, the City's campaign finance laws[2] included disclosure requirements for independent expenditures, which applied to a committee or person spending at least $1,000 in support or opposition to a candidate in a City election.[3] The law required the spender to both file a report of the expenditure and a copy of the campaign communication (including a mass

_____

more in a calendar year; (b) makes independent expenditures totaling one thousand dollars ($1,000) or more in a calendar year; or (c) makes contributions totaling ten thousand ($10,000 or more in a calendar years to or at the behest of candidate or committees." Section 82047 defines "person" as "an individual, proprietorship, firm, partnership, joint venture, syndicate, business trust, company, corporation, limited liability company, association, committee, and any other organization or group of persons acting in concert." Section 82025 defines "expenditure" as: "A payment, a forgiveness of a loan, a payment of a loan by a third party, or an enforceable promise to make a payment, unless it is clear from the surrounding circumstances that it is not made for political purposes. Expenditure does not include a candidate's use of his or her own money to pay for either a filing fee for a declaration of candidacy or a candidate statement prepared pursuant to Section 13307 of the Elections Code. An expenditure is made on the date the payment is made or on the date consideration, if any, is received, whichever is earlier"

[2] The City amended its laws in this area subsequent to when the Complaint was filed, as explained further below.

[3] "Independent Expenditure" was a term defined under City law to include "an expenditure made by any person in connection with a communication that expressly advocates the election or defeat of a clearly identified candidate; or taken as a whole and in context, unambiguously urges a particular result in an election, but which is not made to or at the behest of the affected candidate or committee." [City RJN, Exhibit 4, pp. 34-36 [Former LAMC § 49.7.1.1.]. The City provision mirrored a state law provision defining independent expenditure. Cal. Government Code § 82031.

mailing of 200 or more) with the Commission, which the Commission then posts on its website. Addendum 1-4 [Former LAMC §§ 49.7.11(C), 49.7.26.]

City law also required persons making independent expenditures on behalf of a candidate to include disclaimers on campaign materials that the communication was not authorized by that candidate. City RJN, Exhibits 1 and 8, pp. 13 and 48 [City Charter Section 470 and former LAMC § 49.7.28(B)]. Additional disclaimer language including "paid for by" information was required of committees making campaign communications. City RJN, Exhibit 8, p. 48 [former LAMC § 49.7.28(A)]. This disclaimer requirement applied to campaign communications, which was defined to include more than 200 substantially similar pieces of campaign literature distributed within a month. City RJN, Exhibit 8, pp. 49 [former LAMC § 49.7.28(D)].

The City's matching funds program is also tied to its independent expenditure laws. Candidates in the City's matching funds program agree to limit their campaign spending for elections to office in exchange for receiving particular public matching funds. City RJN, Exhibit 2, pp. 19-21 [Charter Section 471], Exhibit 6, pp. 43-44 [former LAMC §49.7.13]. However, the spending limit is lifted if aggregate independent spending in the candidate's race exceeds certain thresholds, allowing candidates to spend additional private funds. City RJN, Exhibit 7, p. 46 [former LAMC § 49.7.14]. In order for this program to work, the

City must receive timely disclosures of the independent expenditures and the City is required to notify all candidates of the expenditure and the communication. Addendum, 3 [former LAMC § 49.7.26(C)]. The Appellant had challenged City Charter Section 470(l) and LAMC Sections §§ 49.7.11(C), 49.7.26 (A) and (B), and 49.7.28.

### ii. Current City law Applicable to Independent Expenditure Communications

The City Council repealed and readopted the City's campaign finance ordinance on September 17, 2012, after the District Court's entry of judgment in order to make major revisions in light of changes in law and technology and in preparation for the City's 2013 elections. ER 30. Additional revisions to that ordinance were made by City Council in December 2012 and the current law became effective January 30, 2013. Consequently, the provisions at issue here have been renumbered and revised. The provision Appellant now challenges is current LAMC Section 49.7.31.

The definitions in City law have been revised, and relevant definitions include "campaign communication," "communication," and "independent expenditure communication." Dickranian RJN, pp. 8-11 [LAMC § 49.7.2.]. These definitions are expressly supplemented by those in the Political Reform Act. Dickranian RJN, p. 8 [LAMC § 49.7.2.].

8

Under current City law, the independent expenditure provisions are applicable to persons making expenditures of $1,000 or more for an independent expenditure communication or spending $100 and distributing a communication to 1,000 or more persons or, if a committee, distributing the communication to 200 or more persons. Dickranian RJN, pp. 30-31 [LAMC § 49.7.31(A)]. As before, the disclosure requirements include filing a report regarding the expenditure and also filing a copy of the communication. The notification must include certain information, specifically, the date and amount of payment, description of the communication, name and address of the person making the payment and the person paid, and a copy of the communication, as well as the identity of contributors to the expenditure who contributed $100 or more. Dickranian RJN, pp. 31-32 [LAMC § 49.7.31(C)]. The full disclaimer provisions also continue to be applicable to committees making independent expenditures, whereas persons not so qualifying are required to make abbreviated disclaimers. Dickranian RJN, pp. 33-34 [LAMC § 49.7.33(B)&(C)]. Contrary to Appellant's assertion, the City's law continues to provide for the lifting of the spending limit for participating matching funds candidates based on a threshold level of independent expenditures, with the City still required to notify candidates accordingly, sending a copy of the communication. Dickranian RJN, pp. 27, 32 [LAMC §§ 49.7.25; 49.7.31(D)]. Without the notification provided for in LAMC § 49.7.31, a

candidate might not be able to fully employ his or her campaign resources in support of his or her candidacy.

**B. Factual Background**

Appellant sent more than 17,000 copies of a letter to voters in February 2009 supporting Los Angeles City Attorney candidate Michael Amerian. E.R. 113. Appellant spent almost $8,000 from her own funds for the printing and mailing of the letter. *Id*. Appellant alleges she acted independently of any candidate or committee in making this campaign mailing. E.R. 99.[4]

The City of Los Angeles is a municipal corporation acting by and through various departments, commission, and offices. The Commission is a department and administrative sub-unit of the City of Los Angeles which is charged with administering and enforcing the City's campaign finance, lobbying, and government ethics laws.[5] City RJN, Exhibit 3, pp. 23-32 [City Charter Sections 700-712].

The Commission became aware of Appellant's campaign communication, opened an investigation and eventually issued a formal accusation against her for violations of the City's independent expenditure disclosure laws. ER 99, 111-114. The violations alleged included: failing to notify the Commission of an

---

[4] These facts were contained in the complaint.

[5] The City Ethics Commission, a commission of the City of Los Angeles, was erroneously named as a separate party to this matter; the City, as the municipal corporation, is the only properly named defendant in the complaint.

independent expenditure in the amount of $7,924.53 made by Appellant relating to a campaign communication for City Attorney candidate Amerian in accordance with LAMC Section 49.7.26(A); failing to send to the Commission a copy of the independent expenditure communication at the time 17,845 copies of the letter were mailed on January 29, 2009 in violation of LAMC Section 49.7.11(C); and failing to include the words "Paid for by Laurel Dickranian" with her address and the phrase "Not authorized by a city candidate" as required by City Charter Section 470(l) and LAMC Section 49.7.26.3. ER 99, 113-114. Ultimately, prosecutors for the Ethics Commission voluntarily dismissed the accusation prior to a formal adjudicatory hearing in March 2011. ER 53, 100.

## 6. Standard of Review

While this Court's reviews a Rule 12(b)(6) dismissal *de novo, N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011), disclosure requirements for political speech are subject to intermediate or "exacting" scrutiny, "which requires 'a substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Citizens United v. FEC*, 558 U.S. 310, 366, 130 S. Ct. 876 (2010) (citing *Buckley v. Valeo*, 424 U.S. 1, 64, 66 (1976)).

### 7. Summary of Argument

There is nothing unconstitutional about the City's modest independent campaign disclosure laws, provisions that are consistent with Supreme Court and Ninth Circuit precedent as they are substantially related to a sufficiently important governmental interest as explained below. The City imposes the event-based reporting requirements at issue only to persons exceeding certain thresholds. The disclosure is not an ongoing reporting scheme nor does it apply to all campaign communications. The City's rules do not prevent anyone from speaking nor do they require, other than limited disclaimer requirements, the independent spender, like Appellant, communicating with many voters to alter the desired content to the spender's communication to voters. The disclosure rules are neither content-based or overbroad.

Pursuant to Supreme Court precedent, the City's independent expenditure communication disclosure requirements are subject to less demanding exacting scrutiny analysis which requires the disclosures be substantially related to a sufficiently important government interest. *Citizen's United*, 558 U.S. at 366-367.

The challenged City requirements serve several important governmental interests, though only one is required. The City's disclosure requirements serve an important informational interest by providing information to voters about independent spenders seeking to influence City elections so the voter can evaluate

the various messages in the election marketplace prior to casting their ballot. As aptly summarized by the Ninth Circuit "Providing information to the electorate is vital to the efficient functioning of the marketplace of ideas, and thus to advancing the democratic objectives underlying the First Amendment ... Thus, by revealing information about the contributors to and participants in public discourse and debate, disclosure laws help ensure that voters have the facts they need to evaluate the various messages competing for their attention." *Human Life of Wash, Inc. v. Brumsickle*, 624 F.3d 990, 1005, 1013 (9th Cir. 2010).

The City's independent expenditure disclosure rules also serve to avoid corruption or the appearance of corruption in several ways and aid in the effective operation of the City's matching funds program. The independent expenditure communication disclosure rules assist the City in enforcing other substantive campaign finance laws, by permitting a determination of whether improper coordination has taken place between the independent spender and the candidate which impacts compliance with candidate contribution limits and determining compliance with disclaimer rules by reviewing the content of communication.

The independent disclosure requirement is also tied to the functioning of the City's campaign public matching funds program for candidates as the spending limit is lifted so that participating candidates can spend additional privately raised funds when threshold levels of independent spending are reached.

Appellant cannot meet her high burden of facially challenging the City's independent spender disclosure requirements. Because the City's independent campaign communication disclosure requirements are substantially like other campaign requirements previously upheld and serve accepted important government interests, the District Court's judgment should be affirmed.

**8. Argument**

### A. The City's Independent Expenditure Disclosure Laws Are Constitutionally Sound and Consistent with Precedent

The Supreme Court, Ninth Circuit, and numerous other courts have upheld independent expenditure disclosure laws substantially like the City's event-based reporting requirements finding the laws substantially related to important government interests. In *Buckley*, the Supreme Court found that disclosure requirements for independent expenditures in federal elections serve several valid governmental interests. These include the government's interests in providing campaign related information to voters and stemming corruption or its appearance by providing information to voters about who is supporting or opposing candidates, and also providing an essential means of gathering the data necessary to detect violations of other campaign finance regulations. *Buckley*, 424 U.S. at 66-68, 75-76, 81. The Court found that disclosure requirements in most cases "to be the least restrictive means of curbing the evils of campaign ignorance and

corruption that Congress found to exist." *Id*. at 68.

Three decades later, the Supreme Court, citing *Buckley*, reiterated the validity of independent expenditure disclosure requirements for campaign communications. In *Citizens United*, the Court reviewed a vast landscape of campaign finance regulations. Although the Court struck down certain types of rules relating to independent expenditures, it specifically upheld disclosure and disclaimer requirements because such rules served a sufficiently important informational interest, namely the public interest "in knowing who is speaking about a candidate" and "enabl[ing] the electorate to make informed decisions and give proper weight to different speakers and messages." *Citizens United*, 558 U.S. at 370-371. The Court also noted that disclaimer and disclosure requirements for independent campaign communications do not limit campaign activities or prevent speech, but rather allow the electorate to react to speech in an educated fashion. *Id.* Additionally, the Court found that the federal disclaimer requirements for independent campaign communications help "avoid confusion by making clear that the ads are not funded by a candidate or political party." *Id.* at 369. In so concluding, the Court upheld campaign communication identification and disclosure requirements in a candidate election similar to those challenged here. Disclosure requirements are a critical (and Constitutional) component of any campaign finance system.

Subsequently, the Supreme Court, the Ninth Circuit, and other courts have embraced the opportunity to reaffirm the importance of election-related disclosure and disclaimer requirements. For instance, in *Family PAC v. McKenna*, 685 F.3d 800 (9th Cir. 2011), this Court upheld committee disclosure requirements targeting the identity of contributors to committees supporting or opposing ballot measures, rejecting First Amendment and Fourteenth Amendment challenges. *See also Human Life*, 624 F.3d at 1013 (upholding disclosure requirements for organization's ballot initiative activities). The challenged independent expenditure communication disclosure requirements, current LAMC Section 49.7.31, are constitutional under this precedent.

The current independent expenditure disclosure requirement requires a person making a $1,000 expenditure for an independent expenditure communication, or spending $100 for an independent communication and distributing the communication to 1,000 persons, to file a disclosure report, along with an exact copy of the communication or script with the Commission. If a committee spends $100 on an independent expenditure communication and distributes 200 copies of the communication, the same requirement applies. Addendum 5-8. Another provision also mandates the campaign communication to include "paid for by" identification information and whether the communication was authorized by the candidate. Dickranian RJN, pp. 33-34 [LAMC §§

49.7.33(B)&(C)]. The Commission must provide the information and communication to the other candidates and post the communication without alteration on its website. Addendum 5-8. The challenged provisions *do not limit* speech or spending in any way. These provisions serve important government interests of providing information to the voters so that they may evaluate the cacophony of speakers and messages in the election marketplace prior to voting. The disclosure provisions also serve important compliance and enforcement interests as discussed in *Buckley*. Moreover, the limited independent expenditure communication disclosure provisions are substantially related to the City's interests. The City's rules only apply to independent spenders making communications over stated thresholds.

Independent expenditure reporting laws for expenditures exceeding a certain threshold level like the City's current requirement applicable to committees or persons spending $1,000 in City elections are commonly upheld. See e.g., *Buckley,* 424 U.S. 76-80 (upholding independent expenditure disclosure of $100 or more by individuals and groups); *Citizens United*, 558 U.S. at 368-371(finding that federal electioneering communication disclosure and disclaimer requirements were constitutional); *Human Life*, 624 F.3d at 1019 (upholding Washington's independent expenditure and political advertisement (including mailings) reporting requirements for advertisements with an initial fair market value of $100);

*McConnell v. FEC*, 540 U.S. 93, 197 (2003) (upholding BCRA's disclosure

requirements, while striking down its segregated fund requirement); *National*

*Organization for Marriage v. McKee*, 649 F.3d 34 (1st Cir. 2011) (upholding

Maine's independent expenditure disclosure requirements applicable to persons

spending at least $100 in the aggregate advocating in candidate elections).

Likewise, the City's requirement that covered independent committees and persons

file of a copy of the campaign communication with the Commission is essentially

the same type of disclosure repeatedly upheld by the Courts under the same

exacting scrutiny standard applicable to other types of disclosure requirements.

See, e.g., *Buckley,* 424 U.S.at 64; *Citizens United,* 558 U.S. at 366-367. The

analysis in decisions from the Supreme Court and Ninth Circuit apply with equal

force to the type of disclosure requirement imposed by the City. The disclosure

provides information about those speaking and spending in candidate elections and

helps inform the political discourse. Moreover, the City's filing requirement only

applies to committees and persons making independent expenditures that exceed

thresholds for a campaign communication as defined by ordinance.

Additionally, at least two courts have upheld rules requiring persons making

independent expenditures to report independent spending directly to candidates

finding the rules to be incremental and of minimal burden consistent with the

Supreme Court's decisions regarding disclosure. In *National Organization for*

*Marriage v. Daluz,* 654 F.3d 115, 119, fn. 6 (1st Cir. 2011) the First Circuit upheld Rhode Island's independent expenditure disclosure requirement mandating independent spenders to provide reports to candidates of the expenditure. The Court found the requirement "indirectly serves the informational interest by permitting a candidate to distance herself from individuals or organizations whose views she does not share," furthering the aim of providing the public with "accurate information about electoral candidates … [and] contributes to the proper functioning of Rhode Island's regulatory regime, as candidates are required to report all expenditures on their behalf to the Board." *See also Buckley*, 424 U.S. at 67-68 (noting the collection of data for purposes of enforcing a regulatory regime to be an important government interest supporting disclosure); *see also Vermont Right to Life Comm., Inc. v. Sorrel*, 875 F. Supp. 2d 376, 398 n.6 (D. Vt 2012) (finding Vermont requirement that independent spender send a copy of a mass media report to candidates serves a valid informational interest in the same manner as the Rhode Island provision in *Daluz* and any "incremental burden is minor"); *McConnell,* 540 U.S. at 235-246 (upholding broadcaster political advertisement recordkeeping and disclosure requirement as important for providing information to candidates and ensuring compliance).

Moreover, laws like the City's independent expenditure disclosure laws are common throughout California and the nation, including the Federal Election

Commission, demonstrating the important integral feature of transparent election laws. In federal elections, individuals are required to disclose independent expenditures of $250 or more. 2 U.S.C. § 434(c),(d),(g). In federal elections, committees have additional filing requirements when making independent expenditures. 11 CFR 104.5(c). In both state and local elections in California, committees making $1,000 in expenditures are required to disclose essentially the same information. Cal. Gov. Code §§ 84204, 84550; *see also* City RJN, Exhibit 12 [New York City Campaign Finance Board Rules, Ch. 13 (requiring the disclosure of independent expenditures and campaign communications once $1,000 is spent in an election cycle and communication identification requirements)]. Indeed, jurisdictions throughout the country employ campaign disclosure requirements similar to the City's rules. Courts uniformly uphold campaign disclosure requirements as constitutional. *See, e.g. Buckley,* 424 U.S. at 68; *Citizens United,* 558 U.S. at 368-371.

In addition to requirements for disclosure of financial and other information related to the independent expenditure, like the City's laws at issue here, at least several other large municipal jurisdictions specifically require filing a copy of the campaign communication that is the subject of the report demonstrating the interest in providing voters with information so they can make informed choices in a local election. See City RJN, Exhibit 9 [San Francisco Campaign and

20

Government Conduct Code §§ 1.161(b) and 1.161.5 (filing of third party mass mailings and electioneering communications)]; Exhibit 10 [San Diego Municipal Code (SDMC) § 27.2980 (requiring filing of electioneering communication with the San Diego Ethics Commission)]; Exhibit 11 [San Jose Municipal Code (SJMC) § 12.06.1010(D) (requiring filing of electioneering communication with the City Clerk)]; Exhibit 12 [New York City Campaign Finance Board Rules, Ch. 13 (requiring the disclosure of independent expenditures and campaign communications once $1,000 is spent in an election cycle)].  Additionally, the original Political Reform Act adopted by the voters in 1974 contained the same provision.

### B. The Supreme Court Has Held that Disclosure Requirements, Such as the City's Independent Expenditure Disclosure Provisions, are subject to the Less Restrictive Exacting Scrutiny Standard and Not Strict Scrutiny

The Supreme Court has applied an exacting scrutiny analysis to campaign finance related disclosures.  In *Citizens United*, the Court upheld federal disclosure requirements for electioneering communications by independent spenders, even for communications that are not the functional equivalent of express advocacy. 558 U.S. at 368-371. The Court recognized that "[d]isclaimer and disclosure requirements may burden the ability to speak, but they 'impose no ceiling on

campaign-related activities.'" *Id.* at 366 (quoting *Buckley*, 424 U.S. at 64). The Court thus declined to review such disclosure requirements through the lens of strict scrutiny and instead "subjected these requirements to 'exacting scrutiny,' which requires 'a substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Id.* (quoting *Buckley*, 424 U.S. at 64, 66). The Court also explained that disclosure is "less restrictive" than a limit on spending, and that the public has an interest in knowing who is responsible for pre-election communications that speak about candidates, even if the ads do not advocate for or against them. *Id.* at 369.

Similarly, in *Doe v. Reed*, 130 S. Ct. 2811 (2010), the Supreme Court ruled that a law requiring disclosure of signatories on a ballot initiative is permissible under an exacting scrutiny analysis. The Court noted that the standard used in disclosure cases is exacting scrutiny, not strict scrutiny, thereby requiring more relaxed important government interest, rather than a rigorous compelling government interest. *See also Human Life*, 624 F.3d at 1013 (noting that *Citizens United* overruled prior Ninth Circuit precedent that applied strict scrutiny to disclosure laws). Even so, the Ninth Circuit has found that similar disclosure requirements serve a compelling government interest. *See Alaska Right to Life Comm. v. Miles,* 441 F.3d 773 (9th Cir. 2006) (ruling that electioneering communication disclosure requirements were not overbroad and met strict scrutiny

standard even though that higher standard was not applicable).

The City's independent expenditure disclosure provisions are entitled to the same exacting scrutiny analysis as other disclosure requirements. The requirement is to disclose the expenditure and the communication made. The requirements neither compel speech nor prohibit it. The requirements are not content based and express and require no particular views; the requirements apply to everyone equally irrespective of content. The spender can tailor his or her message as the spender chooses. Appellant's attempt to characterize the City's disclosure laws as content-based or compelled speech is contrary to precedent and common sense. The challenged provisions only require disclosure of the expenditure and filing a copy of the communication.

### C. The City's Independent Expenditure Disclosure Requirements Serve Important Interests of Informing the Voters and Other Interests

Just as is the case with the campaign disclosure provisions at issue in *Buckley* and a myriad of other campaign finance cases, the City's disclosure rules for independent expenditures serve important governmental interests, and are substantially related to the City's interest to provide information to voters about the persons seeking to influence election of City candidates so they can make informed

choices about City candidates. *Buckley*, 424 U.S. at 66-68, 75-76, 8; *Citizen's United*, 558 U.S. at 366-371.

Indeed, the requirement serves multiple City interests (though only one interest is required in order for the Court to uphold the law). *Citizens United,* 558 U.S. at 369-371. As stated by the Ninth Circuit in *Human Life*: "*Buckley* recognized this informational interest as substantial, and in its campaign finance jurisprudence, the Supreme Court consistently has acknowledged the important role played by disclosure requirements in political discourse." *Human Life*, 624 F.3d at 1006.

First, the filing requirement serves the City's educational interests in providing information to City voters about the communication and who is spending money in City elections. The informed voter can then determine for him or herself whether the communication (or who is paying for the communication) is relevant to their voting selection and later determine whether the elected candidate is providing special favors. "A public armed with information about a candidate's most generous supporters is better able to detect any post-election special favors that may be given in return." *Buckley,* 424 U.S. at 67. As recognized by the Ninth Circuit, "providing information to the electorate is vital to the efficient functioning of the marketplace of ideas, and thus to advancing the democratic objectives underlying the First Amendment." *Human Life*, 624 F.3d at 1005. As recently

noted by the Seventh Circuit, with the increase in outside spending in elections since *Citizen's United*, campaign finance information can help "busy voters sift through the information and make informed political judgments. Transparency in campaign finance allows the public to weigh the credibility of the speaker and thus the persuasiveness of the message, and that is so generally whatever the question is." *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 490-491 (7th Cir. 2012)(citation omitted).

The filing also provides information to the candidates so they can choose whether to respond, which has previously been accepted by courts as a legitimate rationale. In *Daluz,* 654 F.3d 115, 119 (1st Cir. 2011), the First Circuit rejected an argument that a Rhode Island law requiring independent spenders file a copy of disclosure report filed with the regulatory board and also directly with the candidate did not serve important interests. Quoting *Buckley* (the "sources of a candidate's financial support . . . alert the voter to the interests to which a candidate is most likely to be responsive," 424 U.S. at 67), the Court found the report-to -candidate requirement helps assure that voters receive accurate information about candidates by "facilitating candidate response to support from parties unaffiliated with the candidate's campaign" and aids Rhode Island's campaign finance system. *Vermont Right to Life Comm., Inc*., 875 F. Supp. 2d 376, 398 (D. VT 2012)(upholding Vermont independent spender report to

candidate requirement citing *Daluz* and informational interest in prompt notification to a candidate to permit the "candidate to distance herself from individuals and organizations whose views she does not share" and promote accurate information about candidates.)

Moreover, the Commission, like other governmental agencies, promotes transparency in the City's elections. Documents filed with the Commission are public records subject to disclosure. California Constitution, Article I, § 3, California Government Code § 6254 et. seq. The documents are posted on the Commission's website and the communication viewed only after accepting a disclaimer noting that the Commission does not comment on the communication. Other jurisdictions include similar requirements. *See* City RJN, Exhibit 9 [San Francisco Campaign and Government Conduct Code §§ 1.161(b) and 1.161.5 (identification and filing of third party mass mailings and electioneering communications)]; Exhibit 10 [San Diego Municipal Code § 27.2980 (requiring identification information on and filing of electioneering communication with the San Diego Ethics Commission)]; Exhibit 11 [San Jose Municipal Code § 12.06.1010(D) (requiring filing of electioneering communication with the City Clerk)]; Exhibit 12 [New York City Campaign Finance Board Rules, Ch. 13 (requiring the disclosure of independent expenditures and campaign communications once $1,000 is spent in an election cycle)]. These requirements,

like the other disclosure requirements, have been in place for years and demonstrate the importance to local jurisdiction's interests in transparent elections and present no Constitutional problems.

Although the City's informational interest is all that is required, the provisions reflect the same additional interests identified by the Supreme Court in *Buckley* – aiding enforcement of related campaign finance provisions, and avoiding corruption or the appearance of corruption. *Buckley*, 424 U.S. at 66-68, 75-76, 81. Since *Buckley*, courts have accepted the government's interests in disclosure particularly as to candidate elections. *See e.g.*, *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 790, 55 L. Ed. 2d 707, 98 S. Ct. 1407 (1978). Though Appellant seeks to cast aside these vital interests, suggesting that no such interests can exist with independent expenditures, in fact, information provided to the Commission is central to the overall campaign finance system in ensuring fairness in elections by requiring information on those spending and communicating in City elections. Receiving the actual communication in the context of an independent expenditure communication relating to a candidate is a key to determining whether coordination with a candidate occurred and whether contribution limits to candidates were followed. Also, the filing requirement assists the Commission in assessing compliance with other City requirements, including compliance with disclaimer requirements. See *Buckley,* 424 U.S. at 68

(concluding federal election disclosure provisions not only serve to provide information to voters regarding the election, avoid corruption or appearance of corruption of candidates, but also as an essential means to gather data necessary to detect violations); *McConnell*, 540 U.S. at 196 (finding interests supporting disclosure in *Buckley* applicable to electioneering disclosure provisions); *Alaska Right to Life v. Miles*, 441 F.3d 773 at 791-792 (9th Cir. 2006).

Appellant wrongfully posits that the City has no valid enforcement interest, citing to *Canyon Ferry Baptist Church v. Unsworth*, 556 F.3d 1021 (9th Cir. 2009) and *Davis v. FEC*, 554 U.S. 724 (2008) for this proposition. These cases do not support Appellant's argument because the City does not claim to have an enforcement interest in relation to contribution limits to independent expenditures. As noted, the City has strong interest in ensuring candidate contribution limits are followed and that independent expenditures are truly independent. In fact, the City's law makes clear that the content of an independent campaign communication can create a presumption that the communication was coordinated with the candidate. As provided in LAMC Section 49.7.2 (A), a communication is presumed to be coordinated with a candidate if the communication "includes information about a candidate's campaign plans, projects or needs that is not generally available to the public or is provided directly or indirectly by the candidate" or "is made in connection with fundraising events or campaign

activities co-sponsored by the candidate and the spender". Dickranian RJN, pp. 8-9 [LAMC § 49.7.2(A)(1)(c)&(f)]. Moreover, as City law requires candidates to file a copy of their campaign communications with the Commission,[6] the receipt of a communication from the both a candidate and independent spender at virtually the same time with the same design or content also raise questions whether the "independent" spender and candidate improperly coordinated that would not otherwise be identified but for receipt of the communication.

Improper coordination would cause the expenditure to instead be a contribution by the spender to the candidate potentially in excess of City contribution limits to candidates. Because independent expenditures are viewed as generally not corrupting and are therefore not limited, ensuring that circumvention of valid contribution limits does not occur by having effective disclosure of independent expenditure communications is even more necessary since the Supreme Court ruled in *Citizen's United*.

The City's disclosure rules serve an additional interest and function relating to the City's matching funds program. Contrary to Appellant's incorrect statement, the City's matching funds law continues to include a feature that lifts the spending limit of participating candidates when a threshold level spending occurs in that race, allowing the candidates to spend privately raised funds.

---

[6] Dickranian RJN pp. 32-33 [LAMC § 49.7.32].

29

Dickranian RJN, p. 27 [LAMC § 49.7.25].  Disclosure of the independent

expenditures (by notifying the Commission) on a timely basis is important for the

proper functioning of the City's matching funds program.  Failure to disclose

independent expenditures means that affected candidates continue to be restricted

by the City's spending limit when the restriction would otherwise be removed by

operation of City law.  Unlike the provision struck down in *Arizona Free*

*Enterprise Club's Freedom Club PAC v. Bennett,* 131 S. Ct. 2806 (2011) which

provided additional public funds based on spending, this type of trigger provision

was upheld.  See e.g. *Ognibene v. Parkes*, 2013 U.S. Dist. LEXIS 49083 (S.D.N.Y.

April 4, 2013)(upholding New York City's Expenditure Limit Relief provision as

more akin to the "across the board elevated contribution limits implicitly approved

in *Davis* leaving both participating and non-participating candidates in the same

position.")

### D. The City's Independent Expenditure Disclosure Laws Are Substantially Related to the Governmental Interests of Providing Information to Voters and Other Interests

The City's disclosure rules are substantially related to its governmental

purposes with a minimal burden on First Amendment rights.  The Supreme Court

has found that "disclosure is a less restrictive alternative to more comprehensive

regulations of speech." *Citizens United*, 558 U.S. at 369.  Similarly, "disclosure

requirements may burden the ability to speak, but they impose no ceiling on campaign-related activities, and they do not prevent anyone from speaking." *Citizens United*, 558 U.S. at 366 (citations omitted).

The City's modest independent expenditure communication disclosure rule does not prevent anyone from speaking, but only requires disclosure when exceeding certain thresholds. The City's challenged provisions bear a substantial relation to the City's strong governmental interest in providing information to voters. Without the disclosure of the independent expenditure, neither the voters nor the City would know who is spending money advocating for candidates in Los Angeles elections. A copy of the communication is particularly essential to the informational interests of the voters so that they can make "informed decisions and give proper weight to different speakers and messages." *Citizens United*, 558 U.S. at 371. Without a copy of the communication, the Commission cannot perform its compliance and enforcement function. Requiring the Commission to individually ask each independent expenditure filer for a copy of the underlying expenditure documentation would be impractical and unworkable and the document would nonetheless still be a public record subject to disclosure.

Additionally, the challenged provision has a threshold, such that it does not apply to *de minimus* campaign activities. To be affected, a committee or person must make independent expenditures of at least $1,000 for a independent campaign

communication in support or opposition to a candidate or ballot measure or at least

$100 with the communication distributed to 1,000 persons if by a person who is

not a committee or to 200 persons by committee.[7]   Moreover, the requirements at

issue are solely event driven and not ongoing reporting requirements when no new

campaign communication concerning City elections is involved.  Unlike the laws

at issue in *Canyon Ferry*, the City does not seek disclosure of all communications

in an election, *only communications that exceed certain monetary and activity

thresholds*.  The City's campaign disclosure requirements do not restrict speech

and are triggered only when certain monetary thresholds are reached.

 The City's disclosure thresholds are reasonable and are entitled to deference.

*See Family PAC v. McKenna*, 685 F.3d 800, 811 (9th Cir. 2011) (upholding

Washington disclosure thresholds for contributions as within the permissible

range); *ProtectMarriage.com v. Bowen*, 830 F. Supp 2d 914 (E.D. Cal. 2011)

(finding $100 threshold for contribution reporting and post election reporting

reasonable and serving a valid informational interest); *National Organization for

Marriage v. Daluz,* 654 F. 3d 115, 118-19 (1st Cir. 2011)(finding $100 reporting

threshold for independent expenditures not "wholly without rationality"); *Vermont

Right to Life Committee v. Sorrel,*  875 F. Supp. 2d 376, 400-401 (D. Vt. 2012)

(finding Vermont $100 threshold for political committee contributors has a rational

---

[7] Pursuant to California Government Code section 82013, a person making $1,000
in independent expenditures in a calendar year, qualifies as a committee.

foundation); *cf. Randall*, 548 U.S. at 230 (striking contribution limits as too low so that candidates could not mount an effective campaign); *Canyon Ferry,* 556 F.3d 1021, 1029-1030(finding that Montana zero dollar threshold requiring committee formation and identification of *de minimus* in-kind expenditures on ballot measures did not accede to the Supreme Court's rationality test.)

The City's campaign finance system would be impeded without the required disclosures, which *Citizens United* endorsed as a "campaign finance system that pairs corporate independent expenditures with effective disclosure." 558 U.S. at 370.  Nor will the independent spender sending campaign communications to numerous voters be more than minimally burdened by the disclosures to the City as there can be no reasonable expectation that such communications are private. Accordingly, the City's disclosures are substantially related to its various governmental interests and are, therefore, constitutional.

### E. The Challenged Provisions Are Not Overbroad and Appellant's Facial Challenge Must Fail

A law is overbroad "if 'a substantial number' of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *U.S. v. Stevens* , 559 U.S. 460, 130 S.Ct. 1577, 1587 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n. 6 (2008). "Facial challenges are disfavored" and accordingly, "federal courts exercise

judicial restraint in applying the 'strong medicine' of declaring a law unconstitutional. One reason for restraint is that facial attacks 'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented. . .'" *Chula Vista Citizens for Jobs and Fair Competition v. Norris*, 875 F. Supp. 2d 1128 fn. 4 (2012) (quoting *Washington State Grange*, 552 U.S. at 450 and 451).

Further, Appellant's facial challenge cannot succeed as she presents only one set of actual facts and has made no showing of a "realistic danger" that the First Amendment protections for parties not before the Court will be significantly compromised. *Alaska Right to Life*, 441 F.3d at 774. In construing *s*tatutes, courts give deference to the government's interpretation of the law. *Stevens,* 130 S.Ct. at 1587-88. As shown, Appellant cannot meet this burden as the City's modest requirements are substantially related to its interests including ensuring that voters have information that about those spending so that the voters can evaluate the messages prior to casting a ballot.

### F. Appellant's Campaign Communications to Voters Do Not Give Rise to Associational Rights

Appellant claims that her First Amendment associational rights are infringed by the City's independent expenditure disclosure laws. However, the Ninth Circuit has held that a First Amendment associational privilege attaches only "to *private,*

*internal* campaign communications concerning the *formulation of campaign strategy and messages."* *Perry v. Schwarzenegger*, 591 F.3d 1126, 1145 n.12 (9th Cir. 2009) (emphasis in original). In *Perry*, the Ninth Circuit rejected a protective order in discovery for "… documents or messages conveyed to … discrete groups of voters or individual voters for purposes such as persuasion, recruitment or motivation -- activities beyond the formulation of strategy and messages." The content of Appellant's independent expenditure communications sent to thousands of voters are not privileged or entitled to protection for associational rights under the First Amendment.

### G. Appellant Cannot Meet her Burden Of Proof

Appellant is incorrect in suggesting that the City bears the burden of demonstrating through evidence that its challenged provisions serve several valid governmental interests. The authority upon which Appellant relies for its proposition is *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004) which noted the established principle that the government "bears the burden of proof on the ultimate question of [a statute's] constitutionality" under strict scrutiny. 542 U.S. at 666. But strict scrutiny does not apply here, see infra p. 21, as the City's disclosure provisions are not content-based and nothing in *Ashcroft* purported to hold that merely by alleging a First Amendment violation, a plaintiff is entitled to heightened review.

Moreover, Appellant ignores binding case precedent that requires such evidence where the campaign finance restriction is novel, but not where the governmental interest in the same type of restriction or the interest has already been established. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1122 (9th Cir. 2011); *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 391, 120 S. Ct. 897, 906, 145 L. Ed. 2d 886 (2000). Unlike San Diego's untested contribution limits applied to recall committees which the Ninth Circuit determined required a showing of the city's interest given its unique nature, the disclosure laws at issue here are common and have been tested. *Citizens for Clean Government v. City of San Diego*, 474 F.3d 647 (9th Cir. 2007); *Thalheimer*, 645 F.3d at 1123 (finding city's anti-corruption interest in fundraising restrictions neither "novel or implausible" though the restrictions differed from prior cases). The City's asserted governmental interests in independent expenditure disclosure are long accepted and are not "novel" or "implausible" and therefore additional evidence through subsequent court proceedings is not necessary. The City's interests are plain and have been accepted since *Buckley* and no "additional evidence" is required to support these modest disclosure provisions. Additionally, as noted above (p. 21), substantially similar provisions including those requiring filing a copy of the communication have been in place for years.

**H. The City's Campaign Disclosure Laws are Not Content-Based Restrictions**

Contrary to Appellant's contention, recent court decisions have not found independent expenditure disclosure laws requiring reporting of independent expenditures to be content-based restrictions.  The Supreme Court and the Ninth Circuit have evaluated independent expenditures and the more expansive electioneering reporting rules under an exacting scrutiny analysis as the typical rules *do not restrict* speech and only require certain *disclosures*.  See *Citizen's United,* 558 U.S. at 366; *Human Life*, 424 F.3d at 1013.

The City's rules are no different.  The report of the expenditure filed with the Commission is substantially similar to the expenditure and electioneering reports filed in *Buckley*, 424 U.S. at 84 and *Citizens United*, 558 U.S. at 366.  Additionally, the City's requirement that a copy of the communication be filed with the Commission (LAMC § 49.7.31(c)(2)) is not a content-based restriction as it merely requires the submission of a copy of the communication that represents the expenditure.  The Commission action in posting such reports and communications on its website does not transform the nature of the filing requirement.  Submission of the campaign communication is necessary so that the City's voters to evaluate the cacophony of messages in the political marketplace and determine who is seeking to influence candidate elections prior to casting their

37

ballot in City elections which have a direct effect on residents day to day living. The disclosure requirement also provides the Commission with necessary information to ensure the required disclaimer is included and also enlighten the determination of whether the expenditure was truly independent and uncoordinated with a candidate.

Moreover, City rules only apply to independent expenditure communications that expressly advocate for the election or defeat of a candidate, when taken as a whole or in context the communications unambiguously urge a particular result in an election. Identifying the scope of the disclosure requirement does not transform this narrow rule into a content-based restriction, but rather helps ensure that the provision is substantially related to the City's government's interests. The Supreme Court has upheld broader federal restrictions applicable to electioneering communications that need not contain express advocacy, but reference a candidate close to an election. *Citizens United,* 558 U.S. at 366-372; *McConnell,* 540 U.S. at 230-231. Accordingly, the City's laws are not content-based and entitled to the same level of exacting scrutiny typically employed by courts evaluating campaign disclosure laws.

Appellant wrongfully cites cases that do not support her arguments. In considering a law requiring disclaimers for pregnancy centers that do not provide or make referrals for abortions, the Fourth Circuit compared the speech at issue in

that scenario referencing campaign finance case law, *Greater Baltimore Center for Pregnancy Concerns Inv. v. Mayor of Baltimore*, 683 F3d 539, 555 (4th Cir. 2012). In its comparison, the Court noted that campaign finance disclosure provisions are held to an exacting scrutiny standard and much less likely to be content-based.

Other than certain disclaimer requirements, the City imposes no requirement that a person say or not say anything when sending a campaign communication. The content of the sender's message remains *entirely* within the sender's control unfettered by the modest reporting requirements.

## I. If Necessary, the Independent Expenditure Disclosure Provisions May be Severed

Appellant suggests, without authority, that even if the City's independent expenditure disclosure requirement is constitutional, that it must fail in its entirety because a subsection (LAMC 49.7.31(C)(2)) requiring a copy of the communication be filed with the Commission is included within the same section of the Municipal Code. Brief, p. 6. Assuming for the sake of argument only, if this Court concludes remand is necessary, the Court need not require additional proceedings on the entire section, as the communication filing subsection is plainly severable. The Municipal Code contemplates that provisions of the campaign finance ordinance be severable should a court conclude that a provision or its application is invalid. Dickranian RJN, [LAMC § 49.7.40]. The court should give

effect to the legislative body's intent for severability. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012).

## 9. CONCLUSION

Predicated on the foregoing, the City respectfully requests that this Court affirm the judgment of the District Court.

DATED: June 17, 2013       CARMEN A. TRUTANICH, City Attorney
LAURIE RITTENBERG, Assistant City Attorney
RENEE A. STADEL, Deputy City Attorney
GABRIEL S. DERMER, Deputy City Attorney


By _____ /s/_____
      GABRIEL S. DERMER
      Deputy City Attorney
      Attorneys for Appellee City of Los Angeles

## CERTIFICATE OF COMPLIANCE

I certify that Pursuant to Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, this Answering Brief is proportionately spaced, has a typeface of 14 points and contains 8,550 words.

DATED: June 17, 2013    By:   /s/ Gabriel S. Dermer

## STATEMENT OF RELATED CASES

Appellee City of Los Angeles is aware of no other pending related case.

| 9th Circuit Case Number(s) | 12-56844 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*******************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  Jun 17, 2013 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)   /s/ Gabriel S. Dermer

*******************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)